IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODNEY WAYNE BOWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:15cv118-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiff Rodney Wayne Bowden ("Bowden") applied for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is

unable to work because of a disability.   His application was denied at the initial

administrative level.   The plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ").   Following the hearing, the ALJ concluded that the

plaintiff was not under a "disability" as defined in the Social Security Act.   The ALJ,

therefore, denied the plaintiff's claim for benefits.   The Appeals Council rejected a

subsequent request for review.   Consequently, the ALJ's decision became the final decision

of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).   Pursuant to 28 U.S.C. § 636(c), the parties have consented to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).   Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11ᵗʰ Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Bowden was 58 years old at the time of the hearing.  R. 37.  He has prior work experience as a dispatcher for a trucking company and a window installer. R. 39, 49.  Bowden alleges that he became disabled on September 6, 2011.  R. 35.  After the

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11ᵗʰ Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5ᵗʰ Cir. 1981) (Unit A).

hearing, the ALJ found that Bowden suffers from severe impairments of cerebrovascular accident with right sided weakness, hypertension, and history of Bell's palsy. R. 21. The ALJ found that Bowden has the residual functional capacity to perform light work with limitations. Specifically, the ALJ found:

> The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk for 30 minutes at a time on even terrain for up to 6 hours a day, with unrestricted sitting. The claimant can [do] no more than occasionally operate foot controls with the right leg, and no climbing ladders, scaffolds, or ropes, or work around unprotected heights or dangerous equipment. The claimant cannot work in direct sun or temperature extremes. The claimant must avoid work requiring near acuity more than frequently.

R. 23. Relying in part on testimony from a vocational expert, the ALJ concluded that Bowden is capable of performing his past relevant work as a dispatcher. R. 28. Accordingly, the ALJ concluded that Bowden is not disabled. *Id.*

**B. The Plaintiff's Claims.** Bowden presents the following issues for review:

(1)     The Commissioner's decision should be reversed because the ALJ erred as a matter of law in failing to properly evaluate and consider the medical opinion evidence in this case.

(2)     The Commissioner's decision should be reversed because the ALJ failed to properly evaluate and analyze all of the non-exertional limitations supported by the medical record before formulating her RFC assessment.

4

Doc. No. 12, p. 7.

## IV. Discussion

**A. Rejection of Treating Physician's Opinion.**  Bowden argues that the ALJ improperly discounted her treating physician's opinion about the severity of his limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Jonathan Stanfield's assessment about the severe extent of his limitations, he would be disabled.

In June 2012, the family practitioner completed a Physical Capacities Evaluation and a Clinical Assessment of Pain form.  R. 217-218.  According to Dr. Stanfield, Bowden can never lift more than 20 pounds occasionally to 10 pounds frequently and can rarely lift 10 pounds occasionally to 5 pounds frequently.  He also found Bowden requires the use of an assistive device to ambulate, is able to sit no more than three hours during an eight-hour work day and stand or walk no more than one hour in an eight-hour work day.  In addition, Dr. Stanfield found that Bowden can never push or pull arm and/or leg controls, climb and balance, bend and/or stoop, or work around hazardous machinery and that he can rarely engage in gross or fine manipulation, reach overhead, or operate a motor vehicle.  Dr. Stanfield concluded that Bowden would miss more than four days per month of work as the result of his impairments due to "right sided and right arm, hand [and] leg numb[ness] [and] weak[ness]."  R. 217.  He also found that Bowden's pain "is present to such an extent as to be distracting to adequate performance of daily activities of work," that physical activity "increase[s] . . . pain to such an extent that bed rest and/or medication is necessary," and that

5

"drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." R. 218.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v.*

*Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Stanfield because his treatment records do not support his assessment that Bowden's functional restrictions are as limited to the extent alleged.

> The severity of restrictions assessed remains inconsistent with the infrequent and limited nature of clinical findings and the course of treatment reflected in Dr. Stanfield's corresponding treatment notes. The frequency of treatment visits documented of record is inconsistent with the frequency of absences assessed as required of the claimant's treatment. Furthermore, the severity of postural, manipulative, and exertional limitations remains inconsistent with Dr. Stanfield's own findings. Treatment records reveal some weakness and residual pain. However, the extent of functional issues supported by the clinical findings has been accommodated by the restrictions reflected in the residual functional capacity assessment. Dr. Stanfield's clinical findings and treatment notes are afforded significant weight, but the assessment performed in June 2012 remains inconsistent with Dr. Stanfield's own office notes as well as other records of treatment, and afforded little weight as inconsistent with the full record.

R. 26.

The ALJ's determination is supported by substantial evidence. On October 10, 2011, Bowden went to Bay Medical Center Emergency Department complaining of "difficulty with gait partial paralysis and diff[iculty] with speech and swallowing." R. 165. Bowden complained that he was unable to keep his balance, that he "tends to tip over to the left," and that he had fallen several times. R. 167. Dr. Zatchel Soto, the emergency room physician, noted Bowden had a "clumsy hand," numbness running along the left side of face and the left upper and lower extremities, and extremity weakness. *Id*. Dr. Soto calculated a National Institute of Health Stroke Score of 0, specifically finding that Bowden's answers were responsive and that he was able to perform certain tasks correctly. R. 168. A CT scan indicated mild generalized atrophy. R. 179. Dr. Soto diagnosed Bowden with cerebral atrophy and benign essential hypertension. R. 174.

On October 18, 2011, Bowden went to Dr. Stanfield for a follow-up visit after the cerebrovascular accident, complaining of left leg weakness, vision problems, and speech "a little bad but much improved" since the previous week. R. 185. Dr. Stanfield's diagnostic assessment was cerebrovascular accident and uncontrolled hypertension. R. 186. He prescribed Zestril. *Id*.

On October 19, 2011, Dr. Kenny R. Blackston, an optometrist, conducted an examination and assessed mild hypertensive retinopathy and mild keratoconjunctivitis secondary to trigeminal paralysis from cerebrovascular accident. R. 181, 207. Dr. Blackston prescribed glasses, artificial tears, and recommended vascular treatment. *Id*.

On October 24, 2011, a carotid sonogram indicated approximately 50% stenosis on

8

the right and less than 50% stenosis on the left.  R. 189.  An echocardiogram report also indicated: (1) a technically reasonable echocardiogram with good acoustic windows; (2) overall well-preserved left ventricular contractility with estimated ejection fraction greater than 55%; (3) moderate to severe left ventricular hypertrophy; (4) diastolic dysfunction; (5) hypertensive heart disease appearing heart; and (6) minimal mitral regurgitation.  R. 190.

On November 1, 2011, Bowden returned to Dr. Stanfield for a follow-up appointment. Dr. Bowden found Bowden's "left leg and grip weak [and] voice a little weak but intelligible."  R. 187, 215.  Dr. Bowden's diagnostic assessment was "cerebrovascular accident - improving."  *Id.*

On April 2, 2012, Bowden underwent a noninvasive vascular lab test.  The radiologist's impression was "abnormal ankle brachial indices seen bilaterally suggesting moderately severe peripheral vascular disease" and "probably a component of inflow disease as well as outflow disease below the knees." R. 200.

On June 25, 2012, Bowden returned to Dr. Stanfield complaining of severe left facial pain which "burns from time to time." R. 213.  Dr. Stanfield noted that the "context of injury was he may have had Bell's palsy in the past." *Id.*  Dr. Stanfield's diagnostic assessment was "late effects of cerebrovascular disease" and "hypertension-benign essential - uncontrolled." R. 214.  He prescribed Lisinopropil and Ultram.  *Id.*

On August 23, 2012, Bowden went to Dr. Stanfield for a follow-up appointment.  Dr. Stanfield found that both the right leg and arm were numb.  R. 211.  His diagnostic assessment was "hypertension-benign essential - stable" and "cerebrovascular accident -

9

stable." R. 211.

On October 17, 2012, Bowden returned to the optometrist complaining of a "scratchy, irritated eye." R. 206. Dr. Blackston diagnosed Bowden with mild hypertensive retinopathy, keratoconjunctivitis, and dermatochalasis. R. 206.

During a follow-up appointment on December 12, 2012, Bowden reported to Dr. Stanfield that he "still need[s] a cane but resolved everything else." R. 209. Dr. Stanfield found that both the right leg and arm were numb" and assessed "hypertension-benign - uncontrolled" and "cerebrovascular accident - improving." R. 210. On the same day, Dr. Stanfield completed a Medical Examination Report for the Alabama Department of Public Safety, in which he noted that Bowden does not "experience side effects of medication which are likely to impair driving ability," that there is "a complete recovery from stroke," and that it is his "opinion that [Bowden] is able to drive safely." R. 220-222.

The medical records indicate that the effects of Bowden's cerebrovascular accident were treated conservatively and that his condition gradually improved over the relevant time period. In addition, there are no medical records indicating that Bowden reported suffering any side effects of medication. Dr. Stanfield's opinion regarding Bowden's physical capacity to perform work and the severity of restrictions is inconsistent with his own medical records. This court therefore concludes that the ALJ's discounting of Dr. Stanfield's opinion about the severity of his limitations is supported by substantial evidence.

Bowden, however, argues that a consultative physician's findings that the use of a cane is warranted bolsters Dr. Stanfield's opinion regarding his functional restrictions. On

December 21, 2011, Dr. Sam Banner, a consultative physician, noted that Bowden walks with a cane and complains of weakness on the left side and tingling on the right side of the body. R. 192. Dr. Banner's examination indicated "left eye sensation change" and that the "right pupil does not contract as much as the left." *Id.* Dr. Banner also found that Bowden had "no pain or difficulty getting on and off table," that "all muscle groups in the upper and lower extremities were 5/5," but that his "sensation to pinprick was diminished to right upper and lower extremities and to left side of face and head." R. 194. He noted that he "cannot explain sensation changes that were described on exam, however, one of his physicians stated his stroke hit midline brain and might explain the sensation changes." R. 195. In addition, he found that Bowden has a "very broad stance" and is able to take "2-3 short steps without a cane." R. 194. Dr. Banner "agree[d] he needs cane for safety." *Id.* The consultative physician diagnosed Bowden with "CVA post 4 months" and recommended "long-term medical care." R. 195.

The ALJ considered the medical findings and testimony concerning Bowden's balancing and walking problems when determining Bowden has the residual functional capacity to perform light work with limitations. During the hearing, Bowden testified that he does not use a cane every day, but that he uses it when he needs to climb stairs or cross different grades. R. 37-38. In addition, there are no medical records indicating that Dr. Stanfield or any other physician prescribed a cane. Nonetheless, the ALJ considered Bowden's difficulties with balancing on uneven terrain and climbing when determining Bowden has the residual functional capacity to perform light work with limitations.

11

Specifically, the ALJ limited Bowden to walking "on even terrain" with "no climbing ladders, scaffolds, or ropes."  R. 23.  Thus, it is clear that the ALJ considered Bowden's walking and climbing limitations when determining Bowden has the residual functional capacity to return to his past work as a dispatcher.  The court also notes that the ALJ's decision to discount Dr. Stanfield's opinion about the severity of his limitations findings is supported by Dr. Banner's opinion regarding muscle strength, as well as the other medical records demonstrating conservative treatment and that Bowden's condition steadily improved.  Based on the foregoing, the court concludes that the ALJ's decision to discount Dr. Stanfield's opinion is supported by substantial evidence.

   **B.  The Pain Analysis.**  Bowden asserts that the ALJ failed to consider the effects of his pain and fatigue on his ability to perform work.  During the hearing, Bowden testified that his face hurts all the time.  R. 40.  He stated that the pain around his cheekbone and eye occurs two to three times a day and lasts from 45 minutes to two hours in duration and that pain medication does not alleviate his symptoms.  R. 41.  In addition, he testified that he suffers from knee pain when he kneels and shoulder pain when he puts too much weight on his cane.  R. 43.  Bowden also stated that he is tired all the time, that he takes a two hour nap in the middle of the day, and that he will nap, close his eyes, or lie in bed when his face hurts.  R. 47.

   "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains

is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

The ALJ acknowledged that Bowden suffers from "persistent medical issues, but [his symptoms] do not establish the debilitating degree of dysfunction alleged by the claimant." R. 25. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility

finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records, objective evidence, and Bowden's own testimony, the ALJ concluded that his allegations regarding his pain was not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

The medical records support the ALJ's conclusion that Bowden's condition is not so severe as to give rise to disabling pain. For example, the medical records demonstrate that the only treatment Bowden sought for his facial pain during the relevant time period was during one follow-up appointment in June 2012, wherein Dr. Stanfield found that Bowden's pain was due to "late effects of cerebrovascular disease." R. 213. In addition, the evidence demonstrates that his condition steadily improved. As previously discussed, the ALJ's determination that Bowden infrequently sought treatment and that his condition was treated

14

conservatively is supported by substantial evidence.  The court therefore concludes that substantial evidence supports the ALJ's conclusion that Bowden's impairments are not so severe as to give rise to disabling pain.

After a careful review of the record, the court concludes that the ALJ's reasons for discrediting Bowden's testimony regarding pain and fatigue were both clearly articulated and supported by substantial evidence.  To the extent that Bowden is arguing that the ALJ should have accepted his testimony regarding his pain, as the court explained, the ALJ had good cause to discount his testimony.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

DONE this 29th day of February, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE